**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**October 26, 2012**

# In the Court of Appeals of Georgia

A12A1624. BARBER v. THE STATE.

ADAMS, Judge.

Kelvin Douglas Barber Jr. was convicted by a jury of arson in the first degree, OCGA § 16-7-60 (a) (3). The trial court denied his motion for new trial, and Barber filed the present appeal, arguing that the evidence was insufficient to support his conviction, and that the trial court erred by failing to charge the jury on his sole defense of accident.

The evidence adduced at trial, viewed to support the jury's verdict as we must on appeal, shows that on March 4, 2009, Barber and his wife, Denise Barber, lived in a house they jointly owned located at 217 Bonnie Sue Drive in Villa Rica, Georgia. Denise's sister, Belinda Yvonne Kent, and her two children were also residing in the home at that time.

Barber and Denise were having marital problems and Barber, who had been unemployed for approximately four years and had been having an affair, had taken money from the couple's joint bank account that Denise, who was employed at Wal Mart, used to pay bills. Barber and Denise argued about the money the night before the fire was set, and that argument continued into the next day when Barber went to the bank and discovered that Denise had moved the money from their joint account to an account that he could not access. Barber came home and the argument continued until Barber left the house. Belinda and her fiancé were leaving the house for an errand and then to go to church, and Denise decided to leave with them so she would not be alone in the house when Barber returned.

Belinda testified that she and her fiancé returned to the house because she forgot her Bible, and that she smelled gasoline as soon as they pulled into the driveway.[1] Belinda looked inside the house through the glass panels by the front door and saw that the foyer was "glazed" with a substance. Although Belinda's fiancé was urging her to get away from the house, she testified that she noticed lights on inside and put her key into the lock to try and open the door. However, before she could get

---

[1] Belinda testified that they parked about two feet from the garage door.

inside, she saw Barber jump down from the upstairs area to the garage and that the next thing she heard was a "boom."

Gary Thomas, who was a certified fire investigator and fire chief for the Carroll County Fire Rescue Department, testified that when firefighters entered the house they saw a small fire on the left hand side of the garage which they extinguished. After the smoke cleared somewhat, firefighters saw a man, subsequently identified as Barber, lying over the driver's seat into the passenger seat inside a vehicle that was parked on the right side of the garage. Barber would not or could not open the door and officers at the scene took him out of the car. Thomas described Barber as semi-conscious, which, he explained, meant that Barber did not respond to "verbal stimuli" but that he did respond to painful stimuli such as being pinched.

William E. "Bill" Ford, another fire investigator with Carroll County, acted as the independent investigator of the fire, arriving about an hour after the fire had been extinguished. Ford testified that he smelled gasoline immediately upon entering the home and his inspection of the home revealed smoke and heat damage throughout the house but no fire damage to the upper floor. He concluded that the fire had been located in the left side of the garage and testified that the flames melted the nearby duct work. Further, he said that there would have been more damage if the sprinkler

system located in the garage area had not properly activated and controlled the fire until fire fighters arrived.

Ford said he also discovered three empty quart "squirt" bottles of charcoal lighter fluid in the kitchen garbage can and that he detected the odor of freshly used lighter fluid. He found two more quarts of lighter fluid in a Dollar General bag in the garage. Ford said he also observed what appeared to be torn up books and shredded papers in the upstairs and lower level bathtubs. Ford saw two gasoline containers in the area where the fire started, and opined that gasoline had been poured out onto the floor from one of the containers; he also found three more gas containers in the rear seat of the vehicle where Barber was found. Ford testified that there were wooden kitchen matches "everywhere" and a gas soaked rag had been stuffed in the neck of the gas tank. Ford later verified that Barber had purchased lighter fluid, matches and three of the gasoline storage cans from a Dollar General Store and had filled the gasoline cans at a Citgo station. Further, certain articles of Barber's clothes later tested positive for both gasoline and charcoal lighter fluid. Based on this evidence and other evidence, Ford said he determined that the fire had been intentionally set.

Ford interviewed Barber later that night. Barber verified many of Ford's observations, and admitted that he had purchased three cans of gasoline in addition

4

to the two he already had at home, and that he had also purchased lighter fluid and matches. He told Ford that he had poured gasoline and lighter fluid throughout the house, and then started the fire on the left side of the garage with a match. His said his intention was to commit suicide, and that he intended for the house and vehicle to burn up and that he would burn up with the vehicle.

Denise testified that while they were in the midst of their argument the night before, Barber had looked around and commented that it used to be a nice house, and then said words to the effect that it would be a shame if it was set on fire. Denise also testified that she had personal effects damaged or destroyed due to the heat and smoke damage, but that none of Barber's personal effects were destroyed. Denise testified on cross-examination that she believed Barber attempted to burn the house down both to get back at her and to kill himself.

Tim Frost, an investigator with Allstate Insurance Company, testified that the house was insured by Allstate and that Allstate paid approximately $62,791 on the damage claim following the fire; $61,387.49 of that amount was paid because of damage to the house. He also testified that Allstate had not given anyone permission to set fire to the house.

Barber also testified at trial. He admitted that he put gasoline "everywhere" in the house and in the garage and that he set the fire because he was depressed and had "had enough" and wanted to kill himself. He further testified that he had no intent to deprive his wife of her rights in the house. Barber also admitted that he drove his vehicle to the Dollar General Store and bought the gasoline cans and then went back inside and purchased lighter fluid. He said he then went to the gas station and filled up the gasoline cans. He also testified that he first tried to commit suicide by carbon monoxide poisoning, but when that did not work, he went into the house and scattered papers and books and "stuff" around everywhere.

Based on this and other evidence presented at trial, the jury convicted Barber of arson in the first degree on Count 1 of the indictment, which tracked the language of OCGA § 16-7-60 (a) (3), and found him not guilty of arson in the first degree on Count 2 of the indictment, which tracked the language of OCGA § 16-7-60 (a) (4).

1. Pursuant to OCGA § 16-7-60 (a) (3),

[a] person commits the offense of arson in the first degree when, by means of fire or explosive, he or she knowingly damages . . . [a]ny dwelling house, . . . whether it is occupied, unoccupied, or vacant and when such is insured against loss or damage by fire or explosive and such loss or damage is accomplished without the consent of both the insurer and the insured.

6

Barber argues that his conviction must be reversed because his intent in setting the fire was to commit suicide, not to burn or damage the house or cause loss to the insurer. Further he argues that the evidence is insufficient to show that he set the fire knowing it would spread to or cause damage to other parts of the house. But OCGA § 16-7-60 (a) (3) does not require that the fire be set with the intent to defraud the insurer; rather, the offense of arson in the first degree is shown under that section if the accused "knowingly damages" any insured dwelling without the consent of the insured by fire or explosive. "'Knowingly' indicates an awareness of the consequences of one's action. 'The use of (knowingly) in an indictment is equivalent to an averment that the defendant knew what he was about to do, and, with such knowledge, proceeded to do the act charged.' Black's Law Dictionary, p. 872 (6th ed. 1990)." *Youmans v. State*, 270 Ga. App. 832, 836 (2) (608 SE2d 300 (2004). Here the evidence, including Barber's statement to the fire investigators, clearly showed that Barber poured gasoline and lighter fluid throughout the house and garage, and not just on his person. Further, the evidence shows that Barber ripped up books and papers and spread them throughout the upper levels of the house as well. And Barber told investigators that he intended for the house to burn, as well as the vehicle he was inside. Although the fire investigator testified that the fire did not spread beyond the

7

garage because the sprinkler system worked, that area did suffer direct fire damage and the smoke and heat damaged the entire house, causing over $60,000 in damage. Thus, the elements of the crime of arson in the first degree were clearly shown here, and Barber's argument to the contrary is unavailing.

2. Barber also urges that the trial court should have charged the jury on his "sole defense" of accident, arguing that there was at least slight evidence to warrant the charge.

As is pertinent here, the transcript shows that the trial court, pursuant to Barber's request at trial, charged the jury as follows: "A person should not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme, undertaking or intention[,]" OCGA § 16-2-2, which is essentially the charge that Barber now contends should have been given. Assuming without deciding that there was at least slight evidence warranting the charge, we find the charge as given clearly and fairly presented the issues to be tried, including defendant's theory of defense. E.g., *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). This enumeration is thus also without merit.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*